UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES WILLIAMS,

          Petitioner,

-vs-                                        Case No.  8:02-cv-1316-T-17TBM

WARDEN PETROBSKY and ROBERT A.
BUTTERWORTH,

          Respondents.

_____

## **ORDER**

This cause is before the Court on Petitioner James Williams' 28 U.S.C. § 2254 petition for writ of habeas corpus. Williams challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

BACKGROUND

On October 9, 1997, Williams was charged by Information with one count of aggravated assault on a law enforcement officer, one count of grand theft, and five counts of robbery with a firearm. (Vol. 1: R 15-20).[1] The crimes occurred on July 8 and 9, 1997.

On June 3, 1998, the case proceeded to jury trial before the Honorable Daniel L. Perry, Circuit Judge. Williams was represented at trial by Assistant Public Defender Lester Bass. The jury found Williams guilty of aggravated assault on a law enforcement officer as to Count I, and guilty of robbery with a firearm as to Counts III, IV, VI, and VII. The court granted Williams' motion for judgment of acquittal as to the charge of grand theft in Count

---

[1] Respondent filed the three-volume record on direct appeal in 2DCA Case No. 2D98-02803 as Exhibit 16. Citations are to the volume and "R" page number when page is numbered with an "R" or volume and "T" (for transcript) page number when page does not have an R number.

II and armed robbery in Count V. On June 30, 1998, the court imposed an enhanced habitual violent felony offender sentence of fifteen years imprisonment on the aggravated assault conviction and thirty-five years on each of the armed robbery convictions, with the sentences to run concurrently with each other but consecutive to the sentence imposed on unrelated cases in Pinellas County, Florida. (Vol. 1: R 61-80).

Williams appealed his convictions and sentences. John R. Dixon, Esquire, the attorney appointed by the court to represent Williams on appeal, filed an initial <u>Anders</u> brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), stating that counsel was unable to make a good faith argument that reversible error occurred. (Exhibit 1). However, after setting out a statement of the case and facts, appellate counsel pointed out that arguably the trial court erred in denying Williams' motion for judgment of acquittal as to the count of aggravated assault on a law enforcement officer, and possibly erred in failing to suppress Williams' confession which was obtained in a custodial interrogation after Williams had specifically requested the presence of an attorney. (Exhibit 1, p. 7).

On January 6, 1999, the state district court of appeal issued an order allowing Williams to file an additional pro se brief to bring other matters to the court's attention which Williams felt should be considered. (Exhibit 2). However, Williams did not file a pro se brief.[2] The State filed an answer brief, agreeing with Williams' appellate counsel that no meritorious grounds existed to support the appeal. (Exhibit 3).

---

[2] In his reply, Williams alleges that he did not receive a copy of the <u>Anders</u> until too late to file a pro se brief. In addition, he alleges that he thought his appellate attorney would file all briefs for him.

On October 15, 1999, in Case No. 2D98-2803, the state district court of appeal per curiam affirmed the judgment and sentence. (Exhibit 4). Williams v. State, 744 So. 2d 1007 (Fla. 2d DCA 1999)[Table].

On November 5, 1999, Williams filed a Rule 3.850 motion for Post-conviction relief. (Exhibit 6). Williams raised five grounds for relief: (1) Defendant was illegally arrested without probable cause; (2) Defendant's confession was illegally obtained; (3) Defendant's confession was obtained by coercion; (4) the pretrial identification process was suggestive and improper; (5) defense counsel failed to suppress Defendant's confession and failed to develop an available defense.

On June 16, 2000, the state trial court summarily denied the Rule 3.850 motion in a written order, with record attachments. (Exhibit 7). First, the court found that Petitioner's allegations in Grounds 1, 2, 3, and 4 were procedurally barred because they presented issues that were or should have been litigated at trial or on direct appeal. Smith v. State, 445 So. 2d 323 (Fla. 1993); see also, Johnson v. State, 593 So. 2d 206 (Fla. 1992) (the constitutionality of search and seizure is a matter that must be brought on direct appeal.) As to Ground 5 of the motion, after discussing the proper standard for assessing ineffective assistance of counsel claims enunciated in Strickland v. Washington, 466 U.S. 668 (1984), the state trial court made the following findings of fact and conclusions of law:

> The record reflects that during the trial, counsel attempted to suppress Defendant's confession based on the 6th Amendment violation, and the issue concerning the admissibility of the evidence was raised on direct appeal. (See trial transcript, pp 180-194, p 237), judicial acts to be reviewed, attached). Moreover, defendant's allegation concerning counsel's failure to present the available defense is not supported by the record. Counsel presented the defense of mistaken identification in both opening and closing arguments, bringing the jury's attention to the fact that none of the robbery

> victims could positively identify Defendant, since the perpetrator of [the] robbery was wearing a black ski mask. (See trial transcript, pp 99-105, 239-241, attached). Moreover, at the conclusion of the State's case, counsel moved for dismissal of four counts of robbery on that ground. (See transcript, pp 231-234, judicial acts to be reviewed, attached). Since Defendant fails to show counsel's deficient performance as required by Strickland, no relief is warranted on this ground.

(Order Denying Motion for Post-conviction Relief, pp. 2-3).

Petitioner appealed the state court's order denying the Rule 3.850 motion. On August 31, 2001, in Case No. 2D01-1742, the state district court of appeal per curiam affirmed the state trial court's order denying post-conviction relief. (Exhibit 8). Williams v. State, 799 So. 2d 1049 (Fla. 2d DCA 2001)[Table]. The mandate was issued by the district court on September 24, 2001. (Exhibit 9).

On August 6, 2001, Williams filed a second motion for post-conviction relief, raising seven claims. (Exhibit 10). On December 17, 2001, the trial court rendered an "Order Denying Motion for Post-Conviction Relief, Pursuant to the Florida Rules of Criminal Procedure 3.850." (Exhibit 11). The state trial court summarily denied the claims, finding the motion to be successive and the claims procedurally barred. Williams filed a motion for rehearing (Exhibit 12), which was denied by the state trial court in an order dated February 18, 2002. (Exhibit 13). Williams appealed the rulings. On June 5, 2002, in Case No. 2D02-1125, the state district court of appeal per curiam affirmed the state trial court's denial of post-conviction relief. (Exhibit 14). Williams v. State, 826 So. 2d 304 (Fla. 2d DCA 2002)[Table]. The mandate was issued on August 20, 2002. (Exhibit 15).

On March 22, 2004, Williams filed a third motion for post-conviction relief and memorandum of law pursuant to Fla. R. Crim. P. 3.850. (Exhibit 17). Williams claimed in

his motion that the trial court fundamentally erred when Williams was convicted, based on the alleged wrong confession of unrelated robberies admitted into evidence by the prosecutor in violation of Williams' right to a fair trial. On June 7, 2004, the state trial court summarily denied the motion, finding it was procedurally barred as successive.[3] (Exhibit 18). The court's order states in pertinent part:

> However, issues which were raised or could have been raised in a prior motion for postconviction relief cannot be litigated in a second 3.850 motion. Marek v. Singletary, 626 So. 2d 160 (Fla. 1993). Accordingly, a court may summarily deny a successive motion for postconviction relief unless the movant alleges that the asserted grounds were not known and could not have been known to him at the time the initial motion was filed, and shows justification for failure to raise the asserted issues in the first motion. Torres v. State, 554 So. 2d 1230 (Fla. 2d DCA 1990). A review of the record reflects that Defendant filed a Motion for Postconviction Relief pursuant to Rule 3.850 on January 5, 2000. (See Motion for Post-conviction Relief, attached). The record further reflects that on June 15, 2000, the Court denied Defendant's Motion For Post Conviction Relief. (See Order Denying Motion For Postconviction Relief and attachments, attached).
>
> In his present Motion, Defendant does not allege that the aforementioned ground was not known or could not have been known to him at the time the initial motion was filed on January 5, 2000. Moreover, Defendant fails to show justification for failure to raise the asserted issues in the first motion filed on January 5, 2000. Consequently, Defendant's present Motion is procedurally barred and no relief is warranted.

(Order Denying Memorandum of Law and Motion for Postconviction Relief at pp. 1-2).

Williams filed a motion for rehearing on June 18, 2004 (Exhibit 19), which was denied by the trial court on September 2, 2004. (Exhibit 20). The court enunciated its reasons for denying rehearing, as follows:

---

[3] Although the state trial court referred to the first Rule 3.850 filed in 2000, and attached copies of the motion and the order denying relief, it appears the court was unaware that Williams had filed a second motion for post-conviction relief in 2001.

> Defendant claims that he is raising a new issue in his second motion for post-conviction relief and thus he is asking the court to hear the new grounds. Defendant cites the admission of a coerced confession as fundamental error. (*See* Motion for Rehearing and Order Denying Memorandum of Law and Motion for Post Conviction Relief, attached). In his second motion for post-conviction relief, Defendant does not allege that the aforementioned ground was unknown to him, thus procedurally barring him from raising the issue in a subsequent motion for postconviction relief. (*See* Order). However, in his motion for rehearing, Defendant alleges that counsel did not object to the confession at trial and that this fundamental error may be corrected post-trial in the absence of a timely objection at trial. (*See* Motion for Rehearing, attached). A review of the trial transcript indicates that defense counsel did object to the admission of the confession at trial and the court ruled that the confession was not coerced and was therefore admissible. (*See* Trial Transcript, page 192, attached). Furthermore, Defendant alleged the improper admittance of the confession in his first motion for post-conviction relief and the allegation was dismissed at that time because it cannot be raised on collateral attack. (*See* Order denying Motion for Post Conviction Relief, attached). Defendant's objection to the confession has been adjudged previously and is therefore not grounds to be reheard.

(Order Denying Motion for Rehearing, pp. 1-2).

Williams appealed the order denying relief. On October 5, 2004, Williams filed an initial brief, pro se. (Exhibit 21). Because of the summary nature of the appeal, the State did not file an answer brief. On April 6, 2005, in Case No. 2D04-4429, the state district court of appeal per curiam affirmed the state trial court's ruling. (Exhibit 22). <u>Williams v. State</u>, 2005 Fla. App. LEXIS 4723 (Fla. 2d DCA 2005)[Table]. The court issued its mandate on April 26, 2005. (Exhibit 23).

Williams then filed a federal petition for writ of habeas corpus. In the present timely-filed second amended petition, he raises four grounds for relief: (1) plain error occurred when the defendant was convicted based on wrong confession of unrelated St. Petersburg robberies admitted into evidence by the prosecutor in violation of the defendant's right to a fair trial; (2) illegally obtained coerced confession in violation of Miranda and its progeny;

(3) the evidence was insufficient to support the conviction of aggravated assault on a law enforcement officer; (4) ineffective assistance of trial counsel for not investigating the case properly and providing a meaningful mistaken identity defense.

## STANDARD OF REVIEW

### Standard of Review

Because Williams filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001).  "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti, 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91. The statutory presumption of correctness

applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

Exhaustion of State Court Remedies

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also, Henderson v. Campbell, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Snowden v. Singletary, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting Duncan v. Henry,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing O'Sullivan, 526 U.S. at 845). This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. O'Sullivan, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson v. Campbell, 353 F.3d at 891(quoting Judd v. Haley, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Williams must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982). Williams must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson v. Campbell, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Schlup, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

### No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman, 501 U.S. 722,  735-36 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

### DISCUSSION

A review of the record demonstrates that, for the following reasons, Williams' petition must be **denied**.

### Ground One


Williams alleges plain error occurred when he was convicted based on the wrong confession of unrelated St. Petersburg robberies admitted into evidence by the prosecutor in violation of Williams' right to a fair trial. This claim is procedurally barred, because it was not raised in state court on direct appeal or in the first Rule 3.850 motion. The issue was raised for the first time in a successive postconviction motion which was found to be procedurally barred by operation of state law. In Florida, Rule 3.850 imposes a procedural bar to successive motions for such relief when the issue could have been raised in a previous motion. Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir. 1990). The Eleventh Circuit has held that where the state court correctly applies a procedural default principle of state law, the federal is required to abide by the state court's decision. Id. (citing Meagher v. Dugger, 861 F.2d 1242 (11th Cir. 1988)).

A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847, 1852 (2004)(citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. In Murray v. Carrier, the Supreme Court recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. 477 U.S. at 496. In

this case, Williams has not shown the requisite cause and prejudice to overcome the procedural bar, nor does he possess a colorable claim of actual innocence. Ground One does not warrant habeas corpus relief.

## Ground Two

Williams contends that his confession was illegally obtained by coercion in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Specifically, Williams argues in the present petition that two St. Petersburg detectives took Williams' confession without Miranda warnings that contained numerous statements of robberies committed in St. Petersburg. According to Williams, these statements were improperly used to convict Williams of the Hillsborough robberies at issue in this case. This claim is also procedurally barred.

The voluntariness of Williams' confession was raised, albeit briefly, in the Anders brief on direct appeal. However, the issue presented by appellate counsel was whether the trial court erred in failing to suppress the confession which was allegedly obtained after Williams had "specifically requested the presence of an attorney." (Initial Brief of Appellant at p. 7). Ground two, as stated in the federal petition, should have been raised in state court on direct appeal but was not, and Williams has not shown justification for failing to raise this specific claim on direct appeal.

Even if the issue had been properly exhausted, however, the trial court's denial of Williams' motion to suppress the confession was objectively reasonable. A suppression hearing was conducted mid-trial outside the presence of the jury when defense counsel advised the court that he had just learned of Williams' allegation that Williams had requested appointment of an attorney at the time he was questioned by police but that law

enforcement officers failed to abide by his request. (Vol. 3: T 180-192). The factual matters to be determined at the hearing were whether Williams had been threatened or coerced into talking with detectives, and whether Williams had asked for an attorney.

Williams testified that he felt he was not free to leave the police station during the interview. (Vol. 3: T 187). He also said he had asked for a lawyer during the early part of the interview and told police officers he did not want to talk to them. (Vol. 3: T 188). In addition, Williams testified that the two detectives, Randy Bell and Steve Corbet, threatened Williams by saying they would arrest Williams' girlfriend and take Williams' step-child away from him if he did not talk. (Vol. 3: T 188). However, Williams acknowledged that he was read his Miranda rights and signed a consent form. (Vol. 3: T 190-191).

Detective Steve Corbet testified for the State. He said that Williams was invited to come to the police station to talk to the officers, and Williams went with the detectives voluntarily. (Vol. 3: T 182). Detective Corbet said that if Williams ultimately had wanted to leave during the initial questioning, he probably would been allowed to do so. The detective denied that Williams ever said he did not want to talk with police, or that he wanted a lawyer. (Vol. 3: T 183-184). The detective also denied ever threatening Williams by telling him that if he did not speak with police, Williams' girlfriend would be arrested and his child taken away from him. (Vol. 3: T 184). Later in the interview, when the questioning focused on the offenses at issue in this case, Detective Bell read Williams his Miranda rights. (Vol. 3: T 184-185). Williams appeared to understand his rights and signed the consent form in the detectives' presence. At no time after signing the consent form did Williams invoke his right to remain silent or request that a lawyer be present. (Vol. 3: T 185).

The trial court found there was no Miranda violation and denied Williams' motion to suppress the confession. (Vol. 3: T 192). In so ruling, the court implicitly determined that Williams did not request counsel during the questioning, and the detectives did not coerce Williams into confessing. The state courts reasonably applied the law of the United States Supreme Court in concluding that Williams' rights were not violated. See Moran v. Burbine, 475 U.S. 412, 422-423 (1986)(Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.)

Given the credibility assessment required to find a voluntary waiver in this case, and the deference due to state-court factual findings under AEDPA, it cannot be said that the trial court's finding was unreasonable under § 2254(d)(2). Ground two does not warrant habeas corpus relief.

## Ground Three

Williams alleges that the trial court erred in denying his motion for judgment of acquittal on the aggravated assault on a law enforcement officer charge because of insufficient evidence that Williams intended to hit Officer Collins with the vehicle. This ground was preserved at trial through a motion for judgment of acquittal. (Vol. 3: T 231-232). Petitioner's defense counsel moved for judgment of acquittal on this count. Counsel argued that there was no evidence that Petitioner intended to hit, run over, or kill Officer Collins with his automobile. (Vol. 3: T 231-232). However, this specific argument was not raised in the direct appeal and is now procedurally barred. On appeal, Williams' appellate

counsel presented the potential issue for review that the trial court erred in denying the defense motion for judgment of acquittal on the charge of aggravated assault on a law enforcement officer because there was insufficient evidence that Officer Collins had a well-founded fear that violence was imminent when Williams was fleeing in the vehicle. (Initial Anders brief of Appellant at p. 7). Now, in the present federal proceeding, Williams contends there was insufficient evidence of his intent to hit the officer. (See § 2254 petition at p. 9-9(A)).

Ground three, as asserted by Williams in the second amended petition, has never been presented to the state courts, and is therefore procedurally barred. As in ground one, Williams has not demonstrated cause or prejudice from his failure to raise this specific argument in his direct appeal.  Ground three does not warrant habeas corpus relief.

### Ground Four

Finally, Williams alleges trial counsel was ineffective for not investigating the case properly and providing a meaningful mistaken identity defense. Specifically, Williams points out that Officer Wogaman's description of the robbery suspect's height and weight differs from Williams' actual height and weight.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. Id. at 687-688. See also Wiggins v. Smith, 539 U.S. 510, 534 (2003); Williams v. Taylor, 529 U.S. 362 (2000). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(d). "[T]he Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims." Williams v. Taylor, 529 U.S. at 391.

The state trial court reasonably determined that counsel effectively presented a mistaken identity defense. Counsel presented this defense in both opening and closing arguments, bringing the jury's attention to the fact that none of the robbery victims could positively identify Williams, since the perpetrator of the robbery was wearing a black ski mask. (Vol. 3: T 99-105, 239-241). Moreover, at the conclusion of the State's case, counsel moved for dismissal of four counts of robbery on that ground, as well as pointing out the discrepancy in the physical description of the suspect:

> MR. BASS [Defense Counsel]: Your Honor, with regards to remaining counts three, four, six and seven, the armed robberies, the witnesses or victims never identified Mr. Williams as the person who committed that crime.
>
> It's questionable whether given the testimony and the description of the person that Officer Collins identified as the person who did this and he identified him as someone who was within the range of five eight to five eleven. Clearly from the testimony from Officer, Detective Corbet and viewing my client he's six four.
>
> THE COURT: Well, I'm going to deny your motion. I think he was sitting in the car most of the time when the officers saw him. I think it would be a hard judgment as to how tall he was with him sitting in the car.
>
> MR. BASS: Yes, Your Honor.

(Vol. 3: T 233-234).

The record reveals that defense counsel was aware of, and vigorously presented a mistaken identity defense. Even if counsel had not done so, however, there was no prejudice to Williams in light of the positive in-court and out-of-court identification of Williams by Officer Michael Collins, and Williams' full, detailed confession to the robberies. (Vol. 3: T 172-173; 198-204).

Ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Williams' petition is denied, with prejudice. The Clerk is directed to enter judgment against Williams and to close this case.

ORDERED in Tampa, Florida, on September 21, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

James Williams
Michele Taylor